IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY E. CAGGIANO, et al,

    Plaintiffs,

v.

TEVA PHARMACEUTICALS USA, INC., et al,

    Defendants.

CIVIL ACTION
NO. 19-3074

**MEMORANDUM OPINION**

**Schmehl, J.** */s/JLS*                                                                            September 9, 2020

## I.     INTRODUCTION

Plaintiffs in this matter filed a Complaint against Defendant, Teva Pharmaceuticals, Inc. in the Court of Common Pleas of Montgomery County, Pennsylvania, setting forth two causes of action under Pennsylvania law: 1) breach of contract and 2) violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 206.1, *et seq* ("WPCL"). Defendant removed the matter to this Court, alleging that Plaintiffs' claims of contractual entitlement to separation pay are "properly brought under and completely preempted by" ERISA Section 502(a). Plaintiffs filed a Motion to Remand, arguing that the Severance Benefit Plan upon which their claims are based is not a "plan" governed by ERISA. Teva opposes remand, arguing that Plaintiffs' claims for benefits are based upon its Separation Benefits Plan ("SBP"), Supplemental Unemployment Benefits Plan ("SUB Plan") and Transition Plan, which are all one plan governed by ERISA. A period of discovery was ordered regarding the relationship of the SBP, the SUB Plan and the Transition Plan to each other, and the parties filed

supplemental briefing. For the reasons that follow, I will grant Plaintiffs' motion and remand this matter back to the Court of Common Pleas of Montgomery County.

## II.     BACKGROUND AND STATEMENT OF FACTS

Teva provided Plaintiffs with benefits pursuant to a Separation Benefits Policy, which sets out specific eligibility rules and a formula for calculating the amount of separation pay based on certain criteria. (ECF No. 1, pp. 42-45.) Pursuant to the SBP, "[a] full- or part-time US-based, non-union Teva employee" is eligible to receive separation pay in the case of, *inter alia*, "elimination of position" and/or "reduction in force." (*Id.* at p. 1.)

Plaintiffs are all former non-union, full-time employees of Teva whose positions were related to facilities management. (Complaint, ¶¶ 29, 33, 34.) Plaintiffs were terminated by Teva after it decided to contract facilities management duties to a service provider. (*Id.*, at ¶¶ 39-42.) Plaintiffs claim that they are therefore entitled to separation pay pursuant to the SBP, which Teva refuses to pay.

## III.    LEGAL STANDARD

28 U.S.C. §1441(b) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In the case of a motion to remand, the court "must assume as true all factual allegations of the complaint." *Yellen v. Teledyne Cont'l Motors, Inc.*, 832 F.Supp.2d 490, 493 (E.D. Pa. 2011) (*quoting Steel Valley Auth. V. Union Switch*

*& Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). The removal statute "is to be strictly construed against removal." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). All doubts are to be resolved in favor of remand, and the moving party bears the burden of showing that federal jurisdiction exists, and that removal was proper. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

ERISA is one of the areas of federal law where "Congress intended the complete preemption doctrine to apply to state law causes of action which fit within the scope of ERISA's civil enforcement provisions." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995). Therefore, when a plaintiff's complaint contains an action to recover benefits due under an employee benefit plan, this will be considered a federal action, regardless of the cause of action pled in the complaint. *Id.*, 57 F.3d at 353 n.2, 354 (citations omitted). In this matter, Plaintiffs argue that the SBP is not an ERISA plan, and therefore, jurisdiction is not proper in federal court. Accordingly, the resolution of the motion to remand turns on whether or not the SBP is an ERISA plan.

## III.  DISCUSSION

Plaintiffs' motion to remand argues that they are entitled to separation pay pursuant to the SBP. In response, Teva asserts that Plaintiffs' action challenges the denial of benefits under the SBP, which is a welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq, and that Plaintiffs' state law claims are therefore preempted by ERISA. In their supplemental briefing, Plaintiffs argue that the SBP is not an ERISA plan, and therefore, their claims are not subject to this Court's jurisdiction.

For ERISA to govern a benefit arrangement, there are five factors that must be met. The benefit arrangement must be: 1) a plan, fund, or program; 2) established or maintained; 3) by an employer or employee organization; 4) for the purpose of providing qualifying benefits; 5) to participants or beneficiaries. *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982); *accord Smith v. Hartford Ins. Grp.*, 6 F.3d 131, 136 (3d Cir. 1993). In the instant matter, the pertinent question is whether the SBP, together with the SUB and the Transition Plan, are a qualifying "plan" under ERISA.

Teva contends that the SBP, SUB and Transition Plan are in fact "one Severance Plan." (Dep. of Elaine McGee, pp. 14-17.) However, after a thorough review of the three documents in question, it is clear that they cannot be considered one plan.

First, a detailed comparison of the three documents show that they contain multiple contradictions and discrepancies. The SUB Plan and Transition Plan both contain extremely detailed sections setting forth a seven-step process for participants to exercise their rights under the Plan. *See* Summary Plan Description for SUB and Transition Plans, ECF No. 23, Exh. E, pp. 10-13. The SBP has no such procedure, merely stating that before providing severance to employees, managers must "obtain approval from their immediate supervisor(s), department Vice President and Human Resources." ECF No. 23, Exh. B, p. 2. Similarly, the SUB Plan and the Transition Plan have a formal "Plan Administrator" to adjudicate claims and appeals (ECF No. 23, Exh. E, p. 13,) but the SBP only states generally that "these guidelines shall be administered by Teva Human Resources and such other person or persons as Teva shall delegate from time to time. . ." ECF No. 23, Ex. B, p. 4.

The documents have different titles, different effective dates and different purposes. The SBP has an effective date of April 4, 2018, amending an earlier version dated January 1, 2018, and the SUB and Transition Plans are effective February 12, 2018. ECF No. 23, Exs. B and E. Further, the SBP does not contain a specific stated purpose, while the SUB Plan states that its purpose is to provide supplemental unemployment compensation benefits to assist former employees who suffered involuntary termination in their transition to new full-time employment. (ECF No. 23, Ex. C, p. 1.) Similarly, the Transition Plan contains a stated purpose, claiming that it is intended to provide payments to eligible employees in addition to and in lieu of benefits paid under the SUB. (ECF No. 23, Ex. D, p. 1.)

Further, the three documents have a plethora of inconsistencies as to eligibility and ineligibility requirements. For example, only non-union employees are eligible under the SBP, while the SUB and Transition Plans do not include that limitation. ECF No. 23, Exs. B, p. 1; C, pp. 4-8; D, pp. 2-4; E, pp. 1-4, 6-8. Eligibility under the SUB Plan requires an employee to apply for unemployment, while the SBP and the Transition Plans do not. *Id.* All three documents contain different language regarding age of employees in terms of eligibility. The SBP makes no mention of age in eligibility or ineligibility requirements, while the SUB Plan states that employees age 62 or older are ineligible and the Transition Plan states that an employee becomes eligible for benefits when he or she reaches the age of 62. *Id.*

Lastly, the three documents in question provide for different numbers of maximum and minimum weeks of pay an eligible employee is entitled to receive. *Id.* An employee could be entitled to different amounts of money, depending on which

document is applied. It is hard to fathom how three documents with this many discrepancies and contradictions could be constitute one severance plan.

Teva supports its argument that all three documents make up one severance plan by relying on language in the SBP that references the SUB and Transition Plans regarding how benefits will be paid. The SBP states:

> Payment Schedule. All amounts paid under this policy will be paid bi-weekly, and subject to all applicable deductions and offsets, including without limitation federal, state and local taxes as well as any state unemployment benefits. All Separation Payments will be made in accordance with the terms and conditions of the Teva Pharmaceuticals USA, Inc. Supplemental Unemployment Benefit Plan or Teva Pharmaceuticals USA, Inc. Employment Transition Plan, whichever is applicable (see below). All payments made under this policy are processed and paid based upon the employee's election of either direct deposit or manual check, in accordance with all applicable federal, state and local laws, and in coordination with Company's payroll schedule.
>
> Supplemental Unemployment Benefit Plan (SUB)
>
> Teva severance will be paid through the Teva Supplemental Unemployment Benefit Plan (the "SUB Plan"). The Teva Supplemental Unemployment Benefit Plan (the "SUB Plan") provides a structured payout of severance benefits to eligible employees who experience an involuntary loss of employment. Under this program, the employee will receive weekly SUB Plan payments which are equal to 100% of the weekly Base Pay, minus any unemployment insurance pay (commonly referred to an "unemployment pay") received from the state or federal government, for the weekly severance period. For each week the employee remains eligible, the employee will receive a payment from Teva for the SUB Plan payment and any applicable payment from the state or federal government for unemployment insurance pay. Added together, these two components will equal 100% of your Weekly Base Pay. The Summary Plan Description for the SUB plan or Employment Transition Plan, whichever is applicable, can be provided upon request.

ECF No. 23, Ex. B, p. 3. However, the mere fact that the SBP **references** the SUB and Transition Plans does **not** mean that all three documents constitute one plan. Teva's argument would be more convincing if the SBP **incorporated** the SUB and Transition

Plans, but it does not. It merely references them. That is hardly the type of compelling evidence that meets Teva's burden in this matter.

In addition, the Transition Plan states that it "and the SUB Pay Plan are separate and distinct plan arrangements." ECF No. 3, Ex. D. The SBP, the SUB Plan and the Transition Plan cannot be considered all one plan, when the Transition Plan clearly states the exact opposite. Teva cannot point to a single document that states that the SBP, the SUB Plan and the Transition Plan all make up one severance plan. The SBP was amended after Teva adopted the SUB Plan and the Transition Plan. If these three documents were intended to be one severance plan, Teva could easily have included language to that effect in the SBP amendment but failed to do so.

Clearly, Teva has failed to offer sufficient evidence to meet its burden of proof in this matter. There is insufficient evidence for the Court to find that the SBP, together with the SUB and Transition Plans, form one severance plan governed by ERISA over which this Court would have jurisdiction. Accordingly, we must conclude that the SBP is a separate contract not governed by ERISA and Plaintiffs' motion to remand must be granted.

## IV. CONCLUSION

For all the reasons set forth above, Plaintiffs' action against Teva must proceed in state court. Accordingly, I will grant Plaintiffs' motion to remand, returning this matter to the Court of Common Pleas of Montgomery County.